[No. B123957. Second Dist., Div. Seven. Sept. 27, 1999.]

DARLING, HALL & RAE, Plaintiff, Cross-defendant and Respondent, v.
AVERIL J. KRITT, Individually and as Trustee, etc., Defendant,
Cross-complainant and Appellant;
JOHN L. FLOWERS, Cross-defendant and Respondent.

DARLING, HALL & RAE, Plaintiff and Respondent, v.
AVERIL J. KRITT, as Executor, etc., Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1 this opinion is certified for partial publication. The opinion is to be published in full with the exception of parts I, III and IV of the Discussion portion of the opinion.

**COUNSEL**

Ronald P. Kaplan for Defendant, Cross-complainant and Appellant and for Defendant and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard and B. Casey Yim for Plaintiff, Cross-defendant and Respondent, for Plaintiff and Respondent and for Cross-defendant and Respondent.

John L. Flowers for Plaintiff, Cross-defendant and Respondent and for Plaintiff and Respondent.

**OPINION**

**WOODS, J.**—Appellant Averil J. Kritt, individually, as trustee of the Kritt Living Trust, and as executor of the estate of Sarah Kritt appeals summary

judgment entered in favor of Darling, Hall & Rae (DHR) on DHR's consolidated complaints for attorneys' fees and summary judgment entered on appellant's cross-complaint for legal malpractice. As a threshold issue, appellant contends the trial court was without jurisdiction to sua sponte reconsider summary judgment motions it had previously denied. Appellant further argues the trial court erred in entering summary judgment on DHR's fee claims because DHR's actions in recovering a worthless $1.1 million judgment and properties rightfully belonging to appellant did not constitute satisfaction of the contingencies specified in the fee agreement. Appellant also contends the trial court erred in entering summary judgment for DHR on his cross-complaint for legal malpractice based on DHR's recovery of these assets because factual issues exist whether the statute of limitations has expired on his claim, whether DHR owed him a duty of care, and whether he was damaged by DHR's actions.

We conclude numerous factual issues not resolved in the trial court preclude the entry of summary judgment on DHR's complaints for recovery of attorneys' fees. However, we conclude the trial court properly entered summary judgment on the cross-complaint because the relevant statute of limitations expired before appellant commenced his cross-action.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In September 1990, Sarah Kritt (Sarah), the elderly mother of brothers Averil Kritt (Averil) and Larry Kritt (Larry), retained the firm of DHR to pursue claims Sarah had against her son Larry for embezzlement of funds and misappropriation of real estate belonging to Sarah. Sarah and her husband, Max Kritt, who died in 1982, had formed the Kritt Living Trust (the Trust) in 1978, and Sarah was the sole income beneficiary of the Trust.

Sometime after Max's death, Sarah gave Larry $3 million to invest. Larry had evidently given Sarah a note for $1.1 million and used the funds taken from her to acquire second and third trust deeds on numerous properties. Larry had a power of attorney to act on behalf of Sarah and was a cotrustee of the Trust (although Sarah contended Larry's power of attorney was forged). When Sarah learned Larry had misappropriated substantial funds and falsely deeded himself a one-quarter interest in two properties the Trust owned located in Sherman Oaks and Denver, she removed him as trustee of the Trust and revoked the power of attorney.

For purposes of pursuing the claims against Larry, DHR and Sarah entered into a written legal services contract (Fee Agreement). The Fee Agreement provided, in relevant part, DHR would "evaluate, prepare, file, if appropriate, and prosecute and defend Legal proceedings with Larry Kritt and

possibly other persons or companies to secure the recovery of funds and other assets and damages, owed to [Sarah] as a result of Larry Kritt's embezzlement and misconduct in managing the financial affairs of [Sarah]." The parties agreed the law firm would be entitled to receive, as fees for legal services, "30% of any net recovery obtained within 60 days of trial or after trial . . . . 'Net recovery' means the amount remaining after the total amount received (whether by settlement or court judgment) has been reduced by the sum of all costs." The Fee Agreement further provided Sarah would pay all costs and expenses incurred in connection with the representation, and in the event "there is no net recovery, [DHR] will receive no attorneys' fees." The Fee Agreement was signed by Sarah and also by Averil as Sarah's attorney in fact. Averil was present at the time the Fee Agreement was signed.

Averil obtained a durable power of attorney from Sarah and became successor trustee of the Trust after Sarah removed Larry. Using his durable power of attorney and in his capacity as trustee, Averil also took funds from joint bank accounts he held with Sarah and/or the Trust and misappropriated title to real property from Sarah and the Trust while he was managing the Trust's and Sarah's financial affairs (including an entire interest in the Sherman Oaks and Denver properties, the same properties in which Larry claimed a one-quarter interest). The property and cash Averil misappropriated was valued at approximately $1.6 million.

Although both of them purportedly had misappropriated property from the Trust to Sarah's detriment, Averil and Larry each filed petitions in late 1993 seeking to be appointed conservator of Sarah's estate. The probate court declined to appoint either of them and appointed Jeffrey Siegel as a neutral temporary conservator for Sarah.[1] Siegel, as conservator, sought to recover from Averil the property and funds he had wrongfully taken from Sarah, although Averil claimed the property and funds were gifts. DHR did not participate in the conservatorship proceedings to recover property from Averil.

DHR pursued actions against Larry both in state court and later in the bankruptcy proceedings Larry had filed in February 1991. On his bankruptcy schedules, Larry listed the Sherman Oaks and Denver properties in which he had obtained a one-quarter interest. In 1994, DHR and Siegel negotiated a settlement whereby Larry agreed a $1.1 million indebtedness to the Trust would be nondischargeable in Larry's bankruptcy proceeding. Larry also executed two quitclaim deeds reconveying his one-quarter interest in the

---

[1]Apparently, Siegel received temporary letters of conservatorship, which expired in February 1994 and which were not renewed.

Sherman Oaks and Denver properties to the Trust, which were recorded on June 8, 1994.[2] These two settlements were represented by stipulated judgments filed in Larry's bankruptcy proceedings.

At the time the conservator's action against Averil was set for trial, the parties (Larry, Averil, Sarah, and the Trust) reached a global settlement in the probate court of all of their claims against each other. Pursuant to the settlement, both Larry and Averil would be allowed to keep what they had embezzled and misappropriated from Sarah and the Trust, Larry would be released from the stipulated judgments in his bankruptcy proceedings, and the conservator's claim against Averil would be dismissed. Larry disclaimed and assigned all of his interest in the Trust to Averil and agreed not to file a will contest, as Sarah's will left her entire estate to Averil. The global settlement was finalized at a hearing held October 17, 1994. Averil was appointed conservator of Sarah's person and estate. DHR did not appear at the hearing on behalf of any of the participants in the global settlement.

Sarah died on November 10, 1994, and Averil was appointed executor of her probate estate.

On November 9, 1995, DHR filed its complaint for breach of its legal services agreement with Sarah (No. 138845, the reclamation action) seeking to recover the 30 percent contingency fees it claimed were due on account of its successful recovery of the Sherman Oaks and Denver properties in Larry's bankruptcy proceedings. DHR sought $50,840 in fees (based on the valuation of $187,500 for the 2 one-quarter interests in the properties as stated in Larry's bankruptcy petition). On March 6, 1996, DHR also filed an action against the estate of Sarah Kritt seeking to recover on its rejected claim in her probate estate for fees DHR claimed on account of the $1.1 million recovery in Larry's bankruptcy proceedings (No. 145814, the creditor's action). DHR sought $330,000 in fees. The two actions were consolidated for trial.

In July 1996 (after obtaining DHR's files on the Kritt matter in February 1996) Averil filed a cross-complaint in the reclamation action in his individual capacity and as executor of Sarah's estate seeking damages and other relief for legal malpractice, breach of fiduciary duty, constructive fraud, concealment, expungement of lis pendens, and accounting. Averil alleged DHR failed to obtain his consent to file the reclamation action in Larry's bankruptcy proceedings, dismissed that action without obtaining an accounting, and failed to advise Averil of DHR's conflict in representing Averil,

---

[2]Siegel had exclusive authority to resolve the pending actions against Larry, although apparently DHR represented Siegel in the proceedings it instituted against Larry.

Sarah, and the Trust simultaneously. Averil claimed the $1.1 million bank-ruptcy settlement was worthless and the recovery of the properties on behalf of the Trust was meaningless because Averil already owned them.[3]

DHR moved for summary judgment/summary adjudication in both actions on the first causes of action for breach of contract against Averil as trustee of the Trust and as executor of the estate of Sarah Kritt. DHR contended it was entitled to a 30 percent contingency fee pursuant to the contract on both the real estate recovery and the $1.1 million judgment. DHR also moved for summary judgment on Averil's cross-complaint on the grounds the action was barred by the statute of limitations, DHR had no duty to Averil because he was not their client, he lacked standing, and he could not demonstrate any damages. On February, 26, 1998, the trial court denied DHR's motions. The trial court found material issues of fact precluded summary judgment/ summary adjudication on the cross-complaint. In addition, with respect to DHR's claims for attorneys' fees, the trial court stated, "there is a dispute as to what was, in fact, recovered at trial. The 1.1 million dollar judgment obtained against Larry Kritt was never recovered. Defendant Kritt contends . . . the judgment was, in fact, valueless." The trial court concluded because DHR could only recover on its contingency fee agreement to the extent Averil recovered on the underlying judgments, summary judgment was inappropriate.

The trial court set the matter for trial and granted DHR's motion to bifurcate the trial to decide DHR's statute of limitations defense first. On March 17, 1998, the parties appeared for the first phase of the trial. The court then advised the parties, based upon its rereading of Averil's declara-tion, that it was vacating its ruling on DHR's motions, citing *Strick* v. *Superior Court* (1983) 143 Cal.App.3d 916, 921 [192 Cal.Rptr. 314] as authority for doing so. The trial court stated it would be basing its reconsid-eration only on the papers previously filed in connection with the motions, and refused to consider additional evidence Averil wanted to present. Trial on the statute of limitations defense then commenced. On March 20, 1998, the court granted DHR's motion on the cross-complaint based on its re-review of Averil's declaration.[4] In the context of considering Averil's motion for a continuance of the trial based upon his ill health, DHR suggested to the court that it also reconsider DHR's summary adjudication motion on the complaints for attorneys' fees. Instead, the court stated, "the

---

[3] The trial court, on its own motion, twice struck the cross-complaint on the grounds certain key allegations were missing. The operative second amended cross-complaint was filed in November 21, 1996.

[4] The trial court found in rereading Averil's declaration, it "overlooked or misunderstood the importance of Mr. Kritt's recitation of the facts."

court is not granting a reconsideration at this time, but I'll allow you to file a motion." DHR did not file a motion. However, on March 26, 1998, the court revisited its prior ruling on summary judgment/adjudication and ruled in favor of DHR on the complaints. The trial court found no triable issues of fact existed with respect to DHR's entitlement to a 30 percent contingency fee on the $1.1 million judgment obtained in Larry's bankruptcy.

On April 7, 1998, the trial court entered an order reconsidering and granting summary judgment on the cross-complaint, and on May 8, 1998, entered an order reconsidering and granting summary judgment on the complaints. Averil filed notices of appeal in both actions on July 6, 1998, prior to the entry of the judgments on November 18, 1998.[5]

## DISCUSSION

Averil contends the trial court erred in reconsidering DHR's summary judgment motions because it acted in excess of the jurisdiction to reconsider granted by Code of Civil Procedure sections 437c, subdivision (f) and 1008. Averil contends absent new facts or law, the trial court could not reconsider its prior rulings. On the merits of the motions, Averil contends the trial court erred because triable issues of fact remained whether (a) the judgment in Larry's bankruptcy constituted a recovery upon which a contingent fee could be awarded; (b) the value of the judgment was certain; and (c) whether DHR's claim was against Sarah or Averil. Averil also contends the trial court erred because summary judgment on the complaints had the effect of awarding DHR an interest in properties owned by a stranger to the instant litigation. Averil contends summary judgment on his cross-complaint was in error because triable issues exist whether (a) Averil had standing to sue DHR, (b) Averil's claims are barred by the statute of limitations, and (c) Averil was damaged by DHR's actions.

Respondents contend both the removal of Larry's claim to the real properties and the negotiation of the $1.1 million nondischargeable judgment in Larry's bankruptcy proceedings constitute recoveries for purposes of the Fee Agreement. Respondents also contend the value of the recoveries are fixed and certain and therefore can provide the basis for calculation of their 30 percent fee. Finally, they contend Averil is individually liable on their fee claims.

---

[5]Pursuant to California Rules of Court, rule 1(c), we treat Averil's premature notices of appeal as being filed November 18, 1998, immediately after entry of the judgments.

I.  *Standard of Review.**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

II.  *The Trial Court Properly Exercised Its Inherent Powers in Sua Sponte
Reconsideration of Respondents' Motions for Summary Judgment.*

Appellant argues the trial court improperly reconsidered the summary judgment motions in reliance on *Strick* v. *Superior Court, supra,* 143 Cal.App.3d 916, 921. Although *Strick* holds a trial court retains jurisdiction under its innate powers to reconsider a previously denied motion in spite of Code of Civil Procedure section 1008, appellant contends *Strick* is no longer good law because the Legislature's 1992 revisions to section 1008 specifically set forth the exclusive and jurisdictional effect of section 1008. (*Garcia* v. *Hejmadi* (1997) 58 Cal.App.4th 674, 687 [68 Cal.Rptr.2d 228].) Appellant contends under section 1008, new facts or law is required before a motion may be reconsidered, and no such new facts or law was before the trial court when it reconsidered the motions. Appellant also contends the trial court was precluded from reconsidering the motions even under the provisions of Code of Civil Procedure section 437c, subdivision (f) because no new facts or law was presented to the court. (*Pender* v. *Radin* (1994) 23 Cal.App.4th 1807, 1811-1812 [29 Cal.Rptr.2d 36].)

Respondents contend the trial court, under its inherent powers and Code of Civil Procedure section 128, subdivision (a)(8), could reconsider on its own motion. (*Hays* v. *Superior Court* (1940) 16 Cal.2d 260, 264 [105 P.2d 975] [inherent powers of court to ensure orderly administration of justice].) Respondents point out the provisions of section 1008 are designed to limit the ability of the parties to bring motions for reconsideration and have no effect on the ability of the court to control its processes by changing or amending its prior orders. (*Bernstein* v. *Consolidated American Ins. Co.* (1995) 37 Cal.App.4th 763, 774 [43 Cal.Rptr.2d 817].)

Code of Civil Procedure section 1008 provides at subdivision (b) a party may renew a motion that has been denied upon a showing of "new or different facts, circumstances, or law."[6] Subdivision (c) of section 1008 specifies the court may, if there has been a "change of law that warrants it to

---

*See footnote, *ante,* page 1148.

[6]Section 1008, subdivision (b) provides in relevant part: "A party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown." Under subdivision (b), the

reconsider a prior order it entered, it may do so on its own motion and enter a different order." Finally, section 1008, subdivision (e) states: "This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section."

In *Hejmadi,* the court granted the defendant's motion for summary judgment. Thereafter, the plaintiff moved for reconsideration under Code of Civil Procedure sections 473 and 1008 on the grounds his original opposition papers had, through inadvertence and time pressure, failed to identify all evidence creating triable issues of fact. The plaintiff argued this constituted new and different facts and circumstances; the trial court granted relief. (58 Cal.App.4th at pp. 679-680.) *Hejmadi* held the plaintiff's showing did not meet section 1008's requirement of "new and different" facts and circumstances in light of 1992 amendments tightening the showing required and making the statute's provisions exclusive and jurisdictional. (58 Cal.App.4th at p. 690.) Similarly *Gilberd* v. *AC Transit* (1995) 32 Cal.App.4th 1494 [38 Cal.Rptr.2d 626] involved reconsideration of a summary judgment motion at a party's instance under section 1008. *Gilberd* held under section 1008, a court acts in excess of its jurisdiction when it grants a motion to reconsider that is not based on new or different facts, circumstances, or law. (32 Cal.App.4th at p. 1500; see also *Baldwin* v. *Home Savings of America* (1997) 59 Cal.App.4th 1192 [69 Cal.Rptr.2d 592] [section 1008 jurisdictional]; *Crotty* v. *Trader* (1996) 50 Cal.App.4th 765, 771 [57 Cal.Rptr.2d 818] [section 1008 does not give court authority to reevaluate or reanalyze facts and authority already presented in the earlier motion]; cf. *Gailing* v. *Rose, Klein & Marias* (1996) 43 Cal.App.4th 1570, 1579 [51 Cal.Rptr.2d 381] [provisions of section 1008 not jurisdictional and therefore did not preclude reconsideration of summary judgment motion even where prerequisites of section are not met].)

We find this line of cases holding Code of Civil Procedure section 1008 is jurisdictional to be inapplicable because section 1008 does not govern the court's ability, on its own motion, to reevaluate its own interim rulings. (*People* v. *Castello* (1998) 65 Cal.App.4th 1242, 1248 [77 Cal.Rptr.2d 314].) Instead, the trial court retains the inherent authority to change its decision at any time prior to the entry of judgment. (*Nave* v. *Taggart* (1995) 34

renewed motion may be made to any judge. Subdivision (a), which provides a motion for reconsideration may be made within 10 days of the denial of the motion, must be made to the same judge previously denying the motion.

Cal.App.4th 1173, 1177 [40 Cal.Rptr.2d 714].) Section 1008 is designed to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and over. On the other hand, these same judicial resources would be wasted if the court could not, on its own motion, review and change its interim rulings. (*Castello, supra,* 65 Cal.App.4th at pp. 1249-1250.) Therefore, the only requirement of the court is that it exercise "due consideration" before modifying, amending, or revoking its prior orders. (*Id.* at p. 1250 [recognizing basis in California Constitution for court's inherent power to correct its own rulings; Legislature under doctrine of separation of powers may regulate, but not impair, court's powers].) In the instant case, the trial court reviewed the papers, in particular the factual materials in opposition to the motions, and then carefully reflected on its prior rulings. Such actions were under the trial court's inherent powers to correct its own rulings and demonstrated it gave due consideration to the previously denied motions. We conclude the court acted properly. Therefore we do not consider respondents' arguments its conduct was proper under section 128 or section 437c, subdivision (f).

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed with respect to the cross-complaint. The remainder of the judgment is reversed and remanded for further proceedings in accordance with the views expressed herein. The parties are to bear their own costs on appeal.

Johnson, Acting P. J., and Neal, J., concurred.

A petition for a rehearing was denied October 26, 1999, and the opinion was modified to read as printed above.

---

*See footnote, *ante,* page 1148.