[No. B148276. Second Dist., Div. Three. Nov. 2, 2001.]

DIANA C. BLAKE, Plaintiff and Appellant, v.
GORDON ECKER et al., Defendants and Respondents.

**COUNSEL**

David P. Cwiklo for Plaintiff and Appellant.

Cohen & Goldfried and Robert M. Goldfried for Defendants and Respondents.

**OPINION**

**CROSKEY, J.**—Diana C. Blake (plaintiff) worked for Gordon Ecker Productions, Inc. After allegedly suffering sexual harassment, she left and sued

the company and various individuals with whom she had worked (defendants), all of whom she claimed were responsible for such harassment.[1] Defendants moved to compel arbitration, their motion was granted, and plaintiff's civil action was stayed pending the arbitration. Plaintiff, who wanted a jury trial, took no steps to actually initiate the arbitration proceedings. In August 2000, the Supreme Court's decision in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*) was filed; it invalidated certain forms of employment-related arbitration agreements.

In October 2000, defendants, who apparently had also taken no action to move the arbitration process forward (beyond obtaining an order to compel), moved to dismiss plaintiff's complaint for lack of prosecution. In partial response to that motion, plaintiff moved to vacate the order compelling arbitration, citing *Armendariz*, and set it for hearing on the same day as defendants' motion to dismiss. The trial court granted the motion to dismiss and refused to consider plaintiff's motion because that motion was moot, given the court's dismissal of the civil action for plaintiff's failure to prosecute.

We conclude that the trial court, having granted defendants' motion to compel arbitration, had no jurisdiction to hear or rule on defendants' motion to dismiss; such a motion should have been addressed to the arbitrator. We therefore must reverse the judgment of dismissal. In addition, the trial court should have ruled on plaintiff's motion to vacate the prior order to compel arbitration in light of the Supreme Court's then recent decision in *Armendariz*, a ruling that we hold must be applied retroactively. Furthermore, in determining whether the arbitration agreement was enforceable, the trial court, upon remand, must consider all of the relevant facts and circumstances, including particularly the provisions of plaintiff's employment agreement, and the existence of the *express* severance clause contained therein, a factual circumstance not present in *Armendariz*, and the dispute as to the circumstances concerning her execution of such agreement.

### FACTUAL AND PROCEDURAL BACKGROUND

We need not discuss the facts related to plaintiff's sexual harassment complaint in any detail. Simply put, plaintiff was an upper-management employee who alleged she had been sexually harassed. She further alleged

---

[1] The named defendants are Gordon Ecker, individually and doing business as (1) Gordon Ecker Productions, Inc. (GEP), and (2) Soundstorm; GEP; and GEP by itself and doing business as Soundstorm. Two persons not individually named as defendants, Blake Marion and John Fanaris, both officers of GEP, allegedly engaged in the harassing conduct.

that, despite her complaints, her harasser, rather than she, was allowed to remain employed, while she was fired.

What must be discussed in some detail, however, are the events that occurred after her complaint was filed. Plaintiff's employment was terminated on April 28, 1998. On September 10, 1998, she filed her complaint, which contained six causes of action, including one for violation of the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12940 et seq.) Her complaint also included a demand for a jury trial.

On November 12, 1998, defendants moved to compel arbitration and to stay the civil action until the arbitration was complete. In support of this motion, they attached a copy of the arbitration provisions of the employment agreement signed by plaintiff. Under the terms of the arbitration clause, plaintiff was required to arbitrate any disputes by her against defendants, except those under the Workers' Compensation Act. (Employment agreement, § 13, subds. (a), (e).)[2] In contrast, defendants were not required to arbitrate any claims they might have against plaintiff for certain violations of the employment agreement, for example, breach of license agreements, and breach of trade secret and confidentiality provisions. (Employment agreement, §§ 13, subds. (a), (f), 7, 8, 10.) The arbitration agreement also contained a severance clause that allows a court to sever any portion of the agreement that a court finds to be unreasonable and unenforceable.[3]

---

[2]The arbitration clause is contained in section 13 of the employment agreement which provided, in relevant part: "13. Arbitration of Disputes. [¶] a. Any and all claims, disputes or controversies between you and the company, *except as otherwise excluded in this paragraph 13,* shall be resolved by binding arbitration pursuant to the provisions of this paragraph 13. . . . [¶] . . . [¶] e. The provisions of this paragraph 13 apply to all claims made *against* the Company, and any of its supervisors, agents, employees, directors, officers, shareholders, and any parent, subsidiary, affiliated or successor company, except as specifically excluded below. [¶] f. *The provisions of this paragraph 13 do not apply to, and arbitration shall not be had, as to the following*: any claim that would otherwise fall within the exclusive jurisdiction of the Workers' Compensation laws of the State of California; and *any claim by the Company against you* for breach of sections 7 [related to inventions and licenses], 8 [related to breach by the employee of covenants related to trade secrets, confidentiality, inventions and licenses] and 10 [related to employee's agreement not to directly or indirectly disrupt, damage, impair, or interfere with the Company's business] of this Agreement, or for violation of any statutory or common law concerning trade secrets or unfair competition, or as otherwise provided by law." (Italics added.)

[3]The severance clause is set out in section 12 of the employment agreement provided: "12. Reasonableness. You recognize that this Agreement contains conditions, covenants, and time limitations that are reasonably required for the protection of the confidential information, trade secrets and business of the Company. *If any limitation, covenant or condition shall be deemed to be unreasonable and unenforceable by a court or arbitrator of competent jurisdiction, then this Agreement shall thereupon be deemed to be amended to provide for modification of such limitation, covenant and/or condition to such extent as the court or arbitrator shall find*

Plaintiff opposed the motion to compel arbitration. Among the grounds she raised was that her FEHA claims were not subject to arbitration. However, on December 3, 1998, the trial court ruled against plaintiff, and ordered the matter to binding arbitration. The court also ordered that plaintiff's action be stayed pending the arbitration.

On December 4, 1998, one day after the order compelling arbitration, the Court of Appeal issued its decision in a case entitled *Armendariz v. Foundation Health Psychcare Services, Inc.* (Cal.App.) In that case, the court held that an employer-imposed contractual agreement for arbitration was enforceable, *even if it lacked a mutuality of remedies.* On March 9, 1999, the California Supreme Court granted review.

While the *Armendariz* case was pending before the Supreme Court, neither party took any action to initiate the arbitration proceedings ordered by the trial court. On August 24, 2000, the Supreme Court handed down its decision in that matter. On October 26, 2000, defendants filed a motion with the trial court to dismiss plaintiff's complaint for failure to prosecute pursuant to Code of Civil Procedure sections 583.410 and 583.420,[4] and California Rules of Court, rules 372 and 373. Defendants argued that plaintiff had never sought to commence the arbitration and that more than two years had elapsed since plaintiff had commenced the action.

Defendants also argued that they had been prejudiced by the delay, because Blake Marion, an alleged harasser, was "no longer employed by defendant Soundstorm," and because "defendant Gordon Ecker [was no] longer affiliated with the business. While Mr. Ecker is still available, his lack of day-to-day involvement with the business makes his participation and assistance less available and less helpful. Other employees who may have been witnesses have also left for other employers, similarly prejudicing Soundstorm's ability to prepare its defense. Moreover, with the passage of time comes the natural fading of memories, which makes it even more difficult." This motion was set to be heard on December 22, 2000.

---

to be reasonable and such modification shall not affect the remainder of this Agreement." (Italics added.)

[4] Code of Civil Procedure section 583.410 provides:

"(a) The court may in its discretion dismiss an action for delay in prosecution pursuant to this article on its own motion or on motion of the defendant if to do so appears to the court appropriate under the circumstances of the case.

"(b) Dismissal shall be pursuant to the procedure and in accordance with the criteria prescribed by rules adopted by the Judicial Council."

Code of Civil Procedure, section 583.420 provides, in relevant part: "(a) The court may not dismiss an action pursuant to this article for delay in prosecution except after one of the following conditions has occurred: [¶] . . . [¶] (2) The action is not brought to trial within the following times: [¶] . . . [¶] (B) Two years after the action is commenced against the defendant . . . ."

On December 1, 2000, plaintiff filed a motion for an order vacating the prior order compelling arbitration and staying the action, and also requested an order scheduling the action for a trial-setting conference and/or a jury trial. Plaintiff argued that at the time the motion to compel had been heard (Dec. 2, 1998), there had been a split of authority on the validity of employment arbitration agreements. *Armendariz* resolved the issue. Accordingly, plaintiff, relying on that decision, argued that her arbitration agreement was unenforceable.[5] Therefore, plaintiff contended, the trial court should vacate its original order compelling arbitration and lift the stay of proceedings so that her action could go forward.

On December 8, 2000, plaintiff also filed and served her opposition to the motion to dismiss and her objections to defendants' supporting declaration.[6] Plaintiff's grounds of opposition were that (1) the uncertainty of the law about employer-imposed pre-employment arbitration agreements that waived certain employee rights "precluded [her] prosecution of [the] action from December 4, 1998 to August 24, 2000" (when *Armendariz* was decided), and (2) defendant (Gordon Ecker) was unavailable for a period of nine months, from June 13, 1998, to March 26, 1999.[7] As to defendants' supporting declaration, plaintiff objected on the grounds that portions of the declaration were speculative, constituted inadmissible hearsay, and were irrelevant.

Defendants opposed plaintiff's motion to vacate the order compelling arbitration. The opposition was based on two alleged procedural faults— failure to comply with the requirements for a motion for reconsideration, and failure to comply with rules related to the format of motions—and on the

---

[5] In making such motion, plaintiff relied on Code of Civil Procedure section 1008, subdivision (c). Subdivision (c) provides: "If a court *at any time* determines that there has been a change in the law that warrants it to reconsider a prior order it entered, it may do so on its own motion and enter a different order." (Italics added.)

[6] Defendants complain about the filing and service of the opposition. Opposition papers must be filed and served at least 10 calendar days before the hearing (Code Civ. Proc., § 1005, subd. (b)), measured backwards from the date of the hearing. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) ¶ 9:105.) December 8 was "at least" 10 days before the December 22 hearing date. According to The Rutter Group treatise, service by ordinary mail on December 8 was arguably sufficient, particularly as both plaintiff's attorney and defendants' attorney were in the same general area (Woodland Hills and downtown Los Angeles). (*Id.*, ¶ 9:105.2.) And, of course, defendants were able to reply to the opposition—a good indication that service was, in fact, sufficient.

[7] Mr. Ecker, according to plaintiff, was "unavailable" because he had been arrested on June 13, 1998, on misdemeanor charges of annoying or molesting minors at Raging Waters Amusement Park, had then been charged by the district attorney with four counts of such conduct, and the verdict in the case (which presumably was favorable, since plaintiff did not mention the outcome) had then come down on March 26, 1999. According to plaintiff, this meant that "realistically" Ecker was unavailable; however, plaintiff did not contend that defendant was jailed or *actually* unavailable.

grounds that (1) application of *Armendariz* was not retroactive; and (2) even if it were retroactively applicable, it did not apply to the facts of plaintiff's case. Defendants also filed a reply to plaintiff's opposition to defendants' motion to dismiss, included therein another declaration, and also filed their own objections to the declaration of plaintiff's attorney. Plaintiff's attorney then filed a second declaration, which showed that he had noticed the depositions of Ecker and the most knowledgeable person at Gordon Ecker Productions, Inc., for December 1, 2000, and that no one had shown up for the depositions.

On December 22, 2000, the trial court granted the motion to dismiss for failure to prosecute, and placed plaintiff's motion to vacate off calendar as moot. An order granting the motion to dismiss and dismissing the complaint was filed on January 5, 2001. On February 14, 2001, plaintiff filed a timely notice of appeal.

## CONTENTIONS ON APPEAL

Plaintiff contends the trial court erred by dismissing her complaint for failure to prosecute, and by denying her motion to vacate the order compelling contractual arbitration. She contends that, under *Armendariz*, the arbitration agreement was unenforceable. Defendants respond that plaintiff is raising a new issue on appeal, to wit, that the trial court exceeded its jurisdiction when it granted the motion to dismiss for want of prosecution, and that, in fact, the trial court properly granted the motion to dismiss, and properly refused to consider the motion to vacate.

## DISCUSSION

### 1. *The Trial Court Erred by Granting the Motion to Dismiss*

Once the trial court stayed plaintiff's civil action, it was stayed for all purposes during the arbitration proceedings. Defendants' only avenue for redress when plaintiff failed to timely prosecute the arbitration was in the arbitration proceeding. (See *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1796, 1797-1801 [13 Cal.Rptr.2d 678] (*Brock*), declined to extend on another issue by *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 982, fn. 14 [64 Cal.Rptr.2d 843, 938 P.2d 903].)

The *Brock* court clearly described the settled principles applicable to this jurisdictional issue. "Once a court grants the petition to compel arbitration and stays the action at law, the action at law sits in the twilight zone of abatement with the trial court retaining merely a vestigial jurisdiction over

matters submitted to arbitration. This vestigial jurisdiction over the action at law consists solely of making the determination, upon conclusion of the arbitration proceedings, of whether there was an award on the merits (in which case the action at law should be dismissed because of the res judicata effects of the arbitration award. [Citations.]). The court also retains a separate, limited jurisdiction over the contractual arbitration which was the subject of the section 1281.2 petition: 'After a petition has been filed *under this title* [i.e., "title 9" (§§ 1280-1294.2)], the court in which such petition was filed retains jurisdiction to determine *any subsequent petition* involving the same agreement to arbitrate and the same controversy, and *any such subsequent petition* shall be filed in the same proceeding.' (§ 1292.6 . . . .)" (*Brock, supra,* 10 Cal.App.4th at p. 1796, italics added by *Brock.*)

■ Thus, rather than seek relief from the trial court for plaintiff's failure to proceed, defendants should have sought relief in the arbitration proceeding, by pursuing the remedies available under the arbitration agreement and the rules of the arbitration association designated therein. (*Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487-488 [35 Cal.Rptr.2d 4]; *Burgess v. Kaiser Foundation Hospitals* (1993) 16 Cal.App.4th 1077, 1081 [20 Cal.Rptr.2d 488]; *Nanfito v. Superior Court* (1991) 2 Cal.App.4th 315, 318-319 [2 Cal.Rptr.2d 876].)[8] Therefore, the trial court had no jurisdiction to grant the motion to dismiss, and its order dismissing the action must be reversed.[9] It did, however, have jurisdiction to consider, and should have ruled upon, plaintiff's motion to vacate. As we

---

[8]There are times, however, when a motion in the trial court may be made to aid in the prosecution of an arbitration. For example, if plaintiff failed to cooperate in the selection of an arbitrator, then the trial court may make the appointment. (Code Civ. Proc., § 1281.6; *Engalla v. Permanente Medical Group, Inc., supra,* 15 Cal.4th at p. 981 [§ 1281.6 represents the "legislative *means of implementing* this state's policy in favor of arbitration by permitting parties to an arbitration contract to expedite the arbitrator selection process"].) This should have been defendants' first step. Once the arbitrator was in place, he or she would have jurisdiction over relief for delay in bringing the arbitration to a resolution. (*Titan/Value Equities Group, Inc. v. Superior Court, supra,* 29 Cal.App.4th at pp. 487-488.) In fact, the arbitration agreement here even specifically provided that the arbitrators would have "the authority to entertain and grant a motion to dismiss . . . ."

[9]We summarily reject defendants' argument that plaintiff is precluded on appeal from raising this jurisdictional objection because she did not raise it in the trial court. As we said in *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334 [67 Cal.Rptr.2d 726], even though an appellant did not raise an issue in the trial court, if that issue is one of law that may be resolved on undisputed facts, it may be raised for the first time on appeal; indeed, it could even be raised by the court rather than the appellant, as long as the respondent has had an opportunity to address it. (*Id.* at p. 1341, fn. 6.) Jurisdiction is clearly such an issue and it has been fully briefed and argued by both parties.

have noted, (see fn. 5, *ante*), there is clear legal authority for such a motion under Code of Civil Procedure section 1008, subdivision (c).[10]

Given the application of Code of Civil Procedure section 1008, subdivision (c), as the authority for plaintiff's motion, we agree with the defendants that it should be treated as a motion for reconsideration of the original motion to compel arbitration. We hold that the trial court was bound to grant such reconsideration in light of the conflict among prior authorities that was resolved by *Armendariz*. This would require the trial court to reconsider and decide defendants' motion to compel arbitration. ■ Under settled principles, it is the defendants' burden to prove "the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.] In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination. [Citation.]" (*Engalla v. Permanente Medical Group, Inc., supra,* 15 Cal.4th at p. 972.)

■ Upon remand, therefore, the trial court should undertake the reconsideration of the defendants' motion to compel in accordance with the

[10]Defendants argue that plaintiff's motion to vacate was a defective motion for reconsideration, and assert that the trial court *could* have denied her motion on certain procedural and jurisdictional bases alone. But, of course, the trial court did not rule on her motion for reconsideration at all, so what it *might* have done is not before us. And, in any event, the alleged defects do not exist.

Contrary to defendants' assertions, the 10-day time limitation of section 1008 has no bearing on the trial court's jurisdiction to vacate an order made a year or more earlier. A change in the law is always an appropriate basis, up until a final judgment is entered, for changing an interim order; courts retain the inherent power, regardless of Code of Civil Procedure section 1008, to change their orders at any time prior to entry of judgment. (*Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1155 [89 Cal.Rptr.2d 676].) And the fact that a party brings the basis for such a change to the court's attention, even if via a motion for reconsideration pursuant to section 1008, and even if such motion is made after the 10-day period, does not negate this inherent power. (*Remsen v. Lavacot* (2001) 87 Cal.App.4th 421, 427 [104 Cal.Rptr.2d 612] ["Whether the trial judge has an unprovoked flash of understanding in the middle of the night or is prompted to rethink an issue by the stimulus of a motion is 'constitutionally immaterial' to the limitation on the power of the Legislature to regulate the judiciary. [Citation.]"].) Thus, the fact that plaintiff brought the change in the law to the court's attention more than 10 days after entry of the order she sought to change is irrelevant. This act takes care of defendants' other complaints that plaintiff did not comply with other requirements of section 1008, such as the need for an affidavit setting forth certain foundational information, and the requirement that a section 1008 motion be made in compliance with Local Rules, rule 3.3 of the Los Angeles Superior Court.

The basic problem with defendants' position is that the trial court never even considered the motion to vacate, but concluded the issue was moot because it was dismissing the complaint. As noted above, the trial court erred by dismissing the complaint. Accordingly, upon our reversal of the order of dismissal and remand of the matter, plaintiff's motion to vacate will clearly be ripe for consideration.

foregoing and then decide that motion in light of the principles discussed below.

### 2. Upon Remand, the Motion to Vacate the Order Compelling Arbitration Must Be Considered and Decided

#### a. Armendariz Is Retroactive

■ Having concluded that the trial court erred by refusing to consider plaintiff's motion for reconsideration, we must remand this matter to the trial court in order to provide it with an opportunity to resolve that issue. The critical question before the trial court will be whether, in fact, *Armendariz* applies to make the parties' arbitration agreement unenforceable. The first issue as to the applicability of *Armendariz* is retroactivity. For the guidance of the trial court, and in the interests of judicial economy, we shall resolve this issue of law. (See, e.g., *Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 970 [259 Cal.Rptr. 599]; *People v. Shipe* (1975) 49 Cal.App.3d 343, 354 [122 Cal.Rptr. 701]; *Overholtzer v. Northern Counties Title Ins. Co.* (1953) 116 Cal.App.2d 113, 128 [253 P.2d 116].)

Defendants argue that *Armendariz* is not retroactive, and that therefore it can have no effect here. However, the general rule is that " 'judicial decisions are given retroactive effect.' " (*Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310, 318 [105 Cal.Rptr.2d 790, 20 P.3d 1086].) Courts sometimes make an exception to this general rule when the decision changed a settled rule on which the parties had relied. (*Ibid.*) But when a court is "merely deciding a legal question, not changing a previously settled rule," there is no reason not to apply a judicial decision to a pending case. (*Ibid.*) While a court *might* decide not to apply a new Supreme Court decision that overrules an appellate court decision that predated an arbitration, it would be much more likely to deny retroactive application to a Supreme Court decision that overruled an earlier Supreme Court decision. (See *ibid.*) And it would be even more likely to deny retroactive effect to a decision that disapproved " 'of a long-standing and widespread practice expressly approved by a near-unanimous body of lower court authorities.' [Citation.]" (*Ibid.*; see also *Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 986-987 [258 Cal.Rptr. 592, 772 P.2d 1059].)

Here, however, there was no "settled rule" as to whether, and under what circumstances, an employer/employee arbitration agreement was enforceable, nor was the enforcement of such agreements, regardless of their terms, something that had become " 'a long-standing and widespread practice

expressly approved by a near-unanimous body of lower court authorities.' " (*Brennan v. Tremco Inc., supra,* 25 Cal.4th at p. 318.) Rather, this was an unresolved issue pursued by parties, representing opposing points of view, who were determined to obtain a final decision on the matter from the highest court of this state. The decision in *Armendariz* was the result of this legal battle. Thus, under settled principles, *Armendariz* may be applied retroactively.

### b. *The Enforceability of the Arbitration Agreement Must Be Decided In the First Instance by the Trial Court*

 *Armendariz* states the law applicable to this case, but that does not resolve the question as to whether that decision makes this particular agreement's arbitration clause unenforceable. That decision, we will leave to the initial consideration of the trial court.

 It is now settled that whether or not employment agreements, such as we have here, are generally subject to the Federal Arbitration Act, California, through its own statutes, enforces similar principles. (*Armendariz, supra,* 24 Cal.4th at pp. 97-98.) There is a strong public policy in favor of arbitration agreements. "[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. [Citations.] In other words, under California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts." (*Id.* at p. 98, fn. omitted.) Thus, in addressing the issues raised in this matter, the trial court must ask the same question and seek its answer by the same analysis as did the court in *Armendariz*: "Are there reasons, based on general contract law principles, for refusing to enforce the present arbitration agreement? In the present case, the answer turns on whether and to what extent the arbitration agreement was unconscionable or contrary to public policy, . . ." (*Id.* at p. 99.)

### (1) *General Principles of Unconsionability*

As the court in *Armendariz* made clear, enforceability of an arbitration agreement is determined by the application of legal principles applicable to contracts generally. (*Armendariz, supra,* 24 Cal. 4th at pp. 97-98.) The general contract principles applicable to this matter relate to "objections to arbitration that apply more generally to any type of arbitration imposed on the employee by the employer as a condition of employment, regardless of the type of claim being arbitrated. These objections fall under the rubric of unconscionability." (*Id.* at p. 113.)

■ First, the trial court determines if the parties' contract was one of adhesion; in other words, was it a standardized contract, drafted and imposed by the party with superior bargaining strength, and relegating the subscribing party to a "take it or leave it" position. (*Armendariz, supra,* 24 Cal.4th at p. 113.) If the contract is determined to be adhesive, that does not mean that the contract may not be enforced. (*Ibid.*) The court must then determine whether the contract is unenforceable, either because (1) the agreement, and/or any of its provisions, *failed to fall within the reasonable expectations of the weaker party,* or (2) even if the agreement and/or any of its provisions were consistent with the parties' reasonable expectations, whether, considered in context, the agreement and/or a particular provision *is unduly oppressive or unconscionable.* (*Ibid.*) The doctrine of unconscionability is a judicially created doctrine that was codified in 1979, when the Legislature enacted Civil Code section 1670.5. (*Armendariz, supra,* at pp. 113-114.) Section 1670.5 provides, in relevant part, "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court *may* refuse to enforce the contract, . . ." (Civ. Code, § 1670.5, subd. (a), italics added.)[11]

■ Although section 1670.5 does not attempt to precisely define "unconscionable," there is a large body of case law recognizing the term has "both a procedural and a substantive element, both of which must be present to render a contract unenforceable. [Citation.] The procedural element focuses on the unequal bargaining positions and hidden terms common in the context of adhesion contracts. [Citation.] While courts have defined the substantive element in various ways, it traditionally involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms. [Citation.]" (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212-1213 [78 Cal.Rptr.2d 533].)

In other words, procedural unconscionability occurs when a party has experienced surprise or oppression due to unequal bargaining power. Substantive unconscionability occurs when there have been overly harsh or one-sided results. (*Armendariz, supra,* 24 Cal.4th at p. 114.) Before a court

---

[11]All further undesignated statutory references are to the Civil Code.

Section 1670.5 provides, in its entirety: "(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, *or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.*

"(b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." (Italics added.)

will refuse to enforce an agreement as unconscionable, there must be some element of both procedural and substantive unconscionability present. (*Ibid.*) However, the two elements can operate on a sort of sliding scale: the more significant one is, the less significant the other need be. (*Ibid.*)

█ Of particular relevance here, given the posture of this case, "a claim of unconscionability often cannot be determined merely by examining the face of a contract, but will require inquiry into its [commercial] setting, purpose and effect." (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 926 [216 Cal.Rptr. 345, 702 P.2d 503]; *Bolter v. Superior Court* (2001) 87 Cal.App.4th 900, 907 [104 Cal.Rptr.2d 888].) This would necessarily include the circumstances under which it was executed. Under section 1670.5, a trial court, *in its discretion*, may refuse to enforce the contract as a whole if it is *permeated* by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results. (Legis. Com. com., reprinted at 9 West's Ann. Civ. Code (1985 ed.) foll. § 1670.5, p. 494; see, e.g., *Bolter v. Superior Court, supra,* 87 Cal.App.4th at pp. 910-911 [requirement of arbitration alone was not unduly unfair but the place and manner in which it was to occur was unconscionable; court severed requirement that arbitration of all controversies, disputes or claims had to take place in Salt Lake City, Utah]; cf. *Armendariz, supra,* 24 Cal.4th at pp. 123-127 [court found arbitration agreement permeated by an unlawful purpose due to the presence of *multiple* defects and not amenable to any severance]; *Pinedo v. Premium Tobacco Stores, Inc.* (2000) 85 Cal.App.4th 774, 781 [102 Cal.Rptr.2d 435] [agreement was "at least equally unconscionable" as the one in *Armendariz*; it was "permeated" by unconscionability because it (a) limited employee's monetary recovery, but not employer's potential recovery; (b) precluded recovery based upon statutory claims, including FEHA and the right, under FEHA, to recover attorney fees; (c) required employee to bear all initial costs; (d) required arbitration to take place only in Oakland, California; (e) was one-sided by requiring only those claims normally brought by employees against the employer to be arbitrated—the issue of severance was not discussed, but the court emphasized that the agreement's permeation with unconscionable provisions was equal to that in *Armendariz*].)

### (2) *Power of Court to Order Severance*

If an agreement is determined to contain provisions found to be unconscionable, both section 1670.5 and *Armendariz* allow the court, in appropriate circumstances, to sever the unconscionable provisions and enforce the balance of the agreement. The *Armendariz* court discussed these principles in

some detail. Section 1670.5 "appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement. But it also appears to contemplate the latter course only when an agreement is '*permeated*' by unconscionability." (*Armendariz, supra,* 24 Cal.4th at p. 122, italics added.) *Armendariz* noted that there was no California cases directly addressing the question of when a trial court abuses its discretion by refusing to enforce an entire agreement because of a finding of such "permeation" or, for that matter just what it actually "means for an agreement to be permeated by unconscionability." (*Ibid.*) *Armendariz* therefore relied upon an analogy to the severance of *illegal* contract terms.

"Civil Code section 1598 states that '[w]here a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void.' Section 1599 states that '[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest.' " (*Armendariz, supra,* 24 Cal.4th at p. 122.) Quoting from its earlier decision in *Keene v. Harling* (1964) 61 Cal.2d 318, 320-321 [38 Cal.Rptr. 513, 392 P.2d 273], the court stated, " ' "Whether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court according to the intention of the parties. If the contract is divisible, the first part may stand, although the latter is illegal. [Citation.]" [Citations.] It has long been the rule in this state that " 'When the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the Courts will make the distinction, for the . . . law . . . [divides] according to common reason; and having made that void that is against law, lets the rest stand' " ' [Citations.]" (*Armendariz,* at p. 122.)

*Armendariz* concluded, "Two reasons for severing or restricting illegal terms rather than voiding the entire contract appear implicit in case law. The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement—particularly when there has been full or partial performance of the contract. [Citations.] Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [Citation.] The overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance. [Citation.] Moreover, courts must have the *capacity* to cure the unlawful contract through severance or restriction of the offending clause, which, . . . is not invariably the case. [¶] The basic principles of severability that emerge from Civil Code

section 1599 and the case law of illegal contracts appear fully applicable to the doctrine of unconscionability. Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz, supra,* 24 Cal.4th at pp. 123-124.)

### (3) *Impact of a Severance Clause in the Employment Agreement Contract*

 In this case, as we have emphasized, the trial court never reached the issue of whether, in its discretion, it should enforce the parties' agreement, either entirely, or after severing or modifying it as allowed pursuant to section 1670.5 and *Armendariz.* One further factor, however, must be taken into account by the trial court when it undertakes to decide this issue.

Unlike the circumstances in *Armendariz* and *Pinedo,* the particular agreement involved here also contained a clause in which the parties *explicitly* agreed that a court or arbitrator could amend the agreement "[I]f any conditions, covenants, and time limitations that are reasonably required for the protection of the confidential information, trade secrets and business of the Company . . . . *shall be deemed to be unreasonable and unenforceable by a court or arbitrator of competent jurisdiction,* . . ." (Italics added.) The agreement provided that it could be "deemed to be amended to provide for modification of such limitation, covenant and/or condition to such extent as the court or arbitrator shall find to be reasonable and such modification shall not affect the remainder of this Agreement." Thus, in this case, the agreement itself *expressly* provided for the very modification by severance of those provisions that resulted in plaintiff's claim of unconscionability.

In *Armendariz,* the court had declined to find that the trial court had abused its discretion in refusing to enforce the entire agreement (i.e., the trial court had refused to save the agreement by a severance of the unconscionable provisions). Two factors prompted this result. "First, the arbitration agreement contains more than one unlawful provision; . . . Such multiple defects indicate a systematic effort to impose arbitration on an employee" in a manner that was tilted in the employer's favor. (*Armendariz, supra,* 24 Cal.4th at p. 124.) "Second, in the case of the agreement's lack of mutuality, such permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement. Rather, the court would have to, in effect, reform the

contract, not through severance or restriction, but by augmenting it with additional terms. Civil Code section 1670.5 does not authorize such reformation by augmentation, nor does the arbitration statute. Code of Civil Procedure section 1281.2 authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful. Nor do courts have any such power under their inherent limited authority to reform contracts. [Citations.] Because a court is unable to cure this unconscionability through severance or restriction and is not permitted to cure it through reformation and augmentation, it must void the entire agreement. [Citation.] [¶] Moreover, whether an employer is willing [once] the employment relationship has ended, to allow the arbitration provision to be mutually applicable, or to encompass the full range of remedies, does not change the fact that the arbitration agreement as written [provided otherwise and was thus] unconscionable and contrary to public policy. *Such a willingness 'can be seen, at most, as an offer to modify the contract; an offer that was never accepted.* No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.' [Citation.]" (*Id.* at pp. 124-125, italics added.)

In this case, the existence of the severance clause would appear to ease the concerns expressed by the *Armendariz* court. Here, the parties *agreed in advance* that the court could effect any necessary modifications in order to remove any "unreasonable and unenforceable" provisions. Thus, the employer's willingness to accept a severance in order to save the arbitration clause would not be an "*offer* to change" the clause, but rather a reliance upon an existing and express clause of the contract.

All of these issues will have to be considered by the trial court in deciding whether the arbitration clause (see fn. 2, *ante*) is enforceable. As noted above, a claim of unconscionability often cannot be determined merely by examining the face of a contract, but will require inquiry into the factual setting surrounding its negotiation and execution. (*Perdue v. Crocker National Bank, supra,* 38 Cal.3d at p. 926; *Bolter v. Superior Court, supra,* 87 Cal.App.4th at p. 907.) The trial court must consider not only the language of the agreement itself (including the severance provisions—see fn. 3, *ante*), but also the conflicting testimony and any other evidence about the circumstances under which plaintiff signed the agreement.

CONCLUSION

The trial court must consider and resolve such conflicting evidence, and then decide whether, in light of the principles discussed herein, to (1) enforce the arbitration clause as written, or (2) enforce the arbitration clause

as modified in accordance with either the general principles of severance as summarized in *Armendariz* or pursuant to the provisions of the severance clause, or (3) not enforce the arbitration clause at all. If the arbitration provisions are determined to be enforceable, either as written or as modified, then the trial court should deny plaintiff's motion to vacate and take such further action as may be appropriate to enforce the parties' commitment to arbitrate their dispute.[12] If, on the other hand, the court determines that the arbitration provisions cannot be enforced, then plaintiff's motion should be granted, the prior order to compel arbitration vacated, this matter restored to the trial court's calendar, and the outstanding stay of proceedings dissolved.[13]

## DISPOSITION

The judgment is reversed. The trial court is directed to enter an order denying defendants' motion to dismiss for failure to prosecute. It is further directed to consider and rule upon plaintiff's motion to vacate the order compelling arbitration, in accordance with the views expressed herein. Plaintiff is awarded her costs on appeal.

Klein, P. J., and Kitching, J., concurred.

---

[12]In such arbitration proceeding, the defendants will be free to renew their motion regarding plaintiff's alleged failure to timely prosecute her action.

[13]At oral argument, we indicated an interest in receiving further briefing on the severance issue and the impact of the agreement's severance clause. In view of our determination, however, to remand this matter to the trial court for reconsideration of defendants' motion to compel, the parties will have a full opportunity to brief and argue those issues. We have reviewed the relevant principles we believe to be applicable, but we do not, by this decision, intend to suggest to the trial court how it should rule.